Filed 7/28/26

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| RYAN STEPHEN EHRENREICH,<br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>SHIRLEY N. WEBER, as Secretary of State, etc.,<br>　　　Defendant and Respondent. | C102706<br><br>(Super. Ct. No. 24WM000081) |

APPEAL from a judgment of the Superior Court of Sacramento County, Jennifer K. Rockwell, Judge.  Affirmed.

Ryan Stephen Ehrenreich, in pro. per., for Plaintiff and Appellant.

Office of the California Secretary of State, Ryan H. Gomez, for Defendant and Respondent.

When Californians vote for the President and Vice President of the United States, they may select from the candidates whose names are printed on the ballot or may write in the name of a candidate.  (Elec. Code, §§ 6901, 15340.)[1]  Although Californians cast their votes for those specific candidates, they do not directly elect the President and Vice President.  Under the federal Constitution, the President and Vice President are instead

_____

[*]Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II and IV of the Discussion.

[1]  Undesignated section references are to the Elections Code.

1

elected by a slate of presidential electors appointed by each state—commonly referred to as the Electoral College. (U.S. Const., art. II, § 1; *id*., 12th Amend.) Each state is allocated a certain number of electors equal to the number of senators and representatives that the state is entitled to in Congress. (U.S. Const., art. II, § 1.) The number of Electoral College votes presently allocated to California is 54.[2]

Ryan Stephen Ehrenreich appeals from the denial of his petition for writ of mandate and complaint for declaratory relief (petition) challenging the constitutionality of sections 8650 to 8653 (presidential elector statutes) pertaining to write-in presidential candidates. As pertinent here, a write-in presidential candidate's votes will only be counted if 54 write-in presidential electors and 54 alternate write-in presidential electors pledge their votes to that presidential candidate in declarations timely submitted to the Secretary of State (Secretary) prior to the general election. (§§ 8650-8653.)

Ehrenreich asserts that the write-in presidential elector and alternate elector declaration requirements in the presidential elector statutes violate the voters' and write-in presidential candidates' constitutional rights. We disagree, concluding Ehrenreich has failed to show the statutes are facially unconstitutional. We further find no merit in Ehrenreich's other assertions of error. We accordingly affirm.

BACKGROUND

I

*Legal Background*

Section 8650 provides: "Any group of individuals, equal in number to the number of presidential electors to which this state is entitled, who desire to be write-in candidates

---

[2] We take judicial notice of this fact on our own motion. (Evid. Code, § 459, subd. (a) [reviewing court may take judicial notice of any matter specified in Evid. Code, § 452]; *id*., § 452, subd. (h) [judicial notice may be taken of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"].)

2

for presidential electors pledged to a particular candidate for President and Vice President of the United States shall file a declaration of write-in candidacy." Section 8651, subdivision (a) specifies the information to be contained in the declarations of write-in presidential elector candidates, including an "[o]ath or affirmation as set forth in Section 3 of Article XX of the California Constitution." (§ 8651, subd. (a)(4).) Section 8651, subdivision (b) further requires that each write-in presidential elector's declaration "be accompanied by a declaration of an individual who will serve as an alternate elector if the elector vacates the elector's office." Section 8652 establishes the deadline for filing the write-in presidential electors' and alternate electors' declarations, and section 8653 provides: "Only those names written on the ballot at the general election for the office of President and Vice President of the United States for which a group of presidential electors are pledged on the declaration of write-in candidacy filed pursuant to Section 8650 shall be counted as votes."

The Legislature modified the declaration requirements in section 8651 pertaining to write-in presidential electors in 2022 through Senate Bill No. 103 (2021-2022 Reg. Sess.), which enacted the Uniform Faithless Presidential Electors Act (Act). The Act addressed the issue of "faithless electors," who are Electoral College electors pledged to a particular presidential ticket, but who abstain from voting or vote for someone else. (Assem. Com. on Elections, Analysis of Sen. Bill No. 103 (2021-2022 Reg. Sess.) as amended March 16, 2021, pp. 5, 6.) Although faithless electors have historically constituted a very small percentage of electoral votes, "even a small number of elector defections could undo the will of millions of voters." (*Id.* at p. 6.) The purpose of the Act is to protect the effectiveness of the citizens' votes for a specific presidential ticket. (*Ibid.*) The Act reflects a model law drafted by the Uniform Law Commission that has been adopted by several other states. (*Id.* at p. 7.)

The Act repealed penalties for faithless voting and instead required the removal and replacement of faithless electors. (Assem. Com. on Elections, Analysis of Sen. Bill No. 103, *supra*, at pp. 6-7.) The Assembly Committee on Elections explained that, under the Act, "each political party (and independent presidential campaign) must designate an alternate for each of its presidential elector nominees. Those nominees and alternates must pledge to support their party's nominee (or the independent presidential ticket). After the election, the winning presidential electors and their alternates assemble at the State Capitol at a meeting presided over by the [Secretary]. Before an elector's presidential and vice presidential ballots are accepted, the elector must present them to the [Secretary]. If they are consistent with the elector's pledge, the ballots are accepted. If not, the ballots are rejected, and the elector is immediately replaced with that elector's alternate, or, in some cases, a different substitute elector as specified. This process continues, with faithless electors being replaced, until all of the state's electoral votes have successfully been cast. The practical effect of the Act is to prevent a presidential elector from successfully casting a faithless vote." (*Id*. at p. 7.)

II

*Factual Background*

In 2023 and 2024, Ehrenreich submitted to the Secretary several statements of write-in candidacy for the 2024 California Republican Presidential Primary. After the Secretary listed his name as a write-in presidential candidate for the Republican Party nomination on the "Official Certified List of Write-In Candidates," Ehrenreich sent the Secretary several letters requesting that she count his write-in votes notwithstanding noncompliance with the write-in elector and alternate elector declaration requirements in the presidential elector statutes. The Secretary did not respond to Ehrenreich's letters.

On May 22, 2024, Ehrenreich filed a verified petition against the Secretary, challenging her implied denial of his request to count the write-in votes cast for him as President in the 2024 California General Election. The challenge is brought on the

4

grounds that the presidential elector statutes are unconstitutional. Ehrenreich alleges the presidential elector statutes deny voters and candidates their constitutional rights of freedom of expression, due process, and equal protection under the law.

Ehrenreich seeks a writ of mandate compelling the Secretary to count and report all write-in presidential votes cast in the 2024 California General Election and directing the Secretary to submit "for approval an alternate scheme for specifying the fifty-four (54) presidential electors, should a write-in presidential candidate or ticket win the contest for the offices of U.S. President and Vice President in the 2024 California General Election."

Ehrenreich further seeks declaratory relief as to the constitutionality of the presidential elector statutes and the definitions of certain words and phrases. He requests a declaration that " 'no write-in candidate certification shall be required.' "

The trial court denied Ehrenreich's petition and several associated requests for judicial notice. The trial court found and explained: "Petitioner filed seven separate pleadings titled 'Request for Judicial Notice of Facts' related to various topics. The pleadings contain a combination of legal argument, Petitioner's declaratory testimony, and exhibits, many of which appear to be printouts of websites. The Court is generally unable to determine what, if any, of the proffered materials may be properly subject to judicial notice. However, while the Court declines to take judicial notice of materials proffered by Petitioner, the Court did consider Petitioner's arguments, testimony, and evidence, to the extent relevant and admissible." We do not set forth the trial court's reasoning as to the merits of the constitutional analysis given the de novo standard of review, as discussed *post*.

Ehrenreich appeals.

DISCUSSION

I

*Preliminary Matters*

A.    *The Appeal Is Not Moot*

The Secretary argues the appeal should be dismissed as moot because the 2024 California General Election has long passed and we are unable to grant effective relief to make Ehrenreich a write-in presidential candidate for that election.  Ehrenreich disagrees, asserting his constitutional challenge is not moot because he intends to avail himself of the write-in presidential candidate process again in 2028, and the matter is of ongoing importance and likely to recur.  We decline to dismiss the appeal as moot.

As the Secretary acknowledges, election disputes are frequently excepted from application of the mootness doctrine due to their importance and likelihood of recurrence.  (Citing *Carson Citizens for Reform v. Kawagoe* (2009) 178 Cal.App.4th 357, 365.)  The Secretary argues, however, without any citation to the record or other evidence that "the facts bearing on the constitutionality of California's presidential write-in statutes are apt to change in the ensuring [*sic*] four years."  It is unclear what the Secretary means by this statement, and we decline to engage in speculation that Ehrenreich "may attempt to comply" with the presidential elector statutes in 2028, as the Secretary asserts.

We exercise our inherent discretion to resolve Ehrenreich's constitutional challenge in this appeal.  (See *Edelstein v. City and County of San Francisco* (2002) 29 Cal.4th 164, 172 (*Edelstein*) [courts frequently exercise their inherent discretion "to resolve constitutional issues pertaining to election laws raised by candidates in elections that were held before decision could be reached"].)

B.    *Forfeited Contentions*

Before we delve into the merits of Ehrenreich's arguments, we note that, under general rules of appellate procedure, we disregard:  (1) statements of fact that are not supported by references to the record (*McOwen v. Grossman* (2007) 153 Cal.App.4th

6

937, 947), (2) citations to documents not included in the record on appeal (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102),[3] (3) arguments raised under inapplicable headings (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153; *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1831, fn. 4 [appropriate headings require litigants to " 'present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass' "]), and (4) arguments not supported by meaningful legal analysis with citations to authority (*In re S.C.* (2006) 138 Cal.App.4th 396, 408).

We disregard such arguments because "it is a fundamental principle of appellate procedure that a trial court [order] is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the [order]." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) We further disregard arguments that are not tailored to the applicable standard of review. (*People v. Foss* (2007) 155 Cal.App.4th 113, 126 (*Foss*) [when arguments are not tailored to the applicable standard of review, "the argument lacks legal force" and "the appellant fails to show error in the judgment"].) Any arguments not discussed in this opinion are deemed forfeited for failure to comply with one or more of the foregoing appellate principles.[4]

---

[3] In that regard, we have denied Ehrenreich's request to submit additional evidence under Code of Civil Procedure section 909 and California Rules of Court, rule 8.252(c).

[4] We treat an in propria persona party the same as a represented party by uniformly applying the procedural and substantive rules pertaining to appeals. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)

7

## II

### *The Procedural Error Claims Lack Merit*

### A. *The Trial Court Did Not Err in Its Review of the Evidence*

As we can best surmise, Ehrenreich argues the trial court erred by denying his requests for judicial notice of website printouts and ignoring his evidence that declarations from write-in presidential electors and alternate electors cannot be obtained at no cost to write-in presidential candidates. We apply the abuse of discretion standard in reviewing a trial court's rulings on the admissibility of evidence and requests for judicial notice (i.e., we affirm the ruling unless no reasonable judge could agree with it). (*Shenefield v. Shenefield* (2022) 75 Cal.App.5th 619, 638; *CREED-21 v. City of San Diego* (2015) 234 Cal.App.4th 488, 520.) Ehrenreich does not address the claims of error within the framework of the standard of review and thus cannot establish error. (*Foss*, *supra*, 155 Cal.App.4th at p. 126.) He also fails to address the trial court's reasons for denying the requests for judicial notice and the trial court's statement that it "did consider Petitioner's arguments, testimony, and evidence, to the extent relevant and admissible."

### B. *The Request for a Statement of Decision Was Untimely*

Ehrenreich argues the trial court erred in denying his request for a statement of decision as untimely because he submitted the request within 10 days from the announcement of the tentative decision, as provided in Code of Civil Procedure section 632. We disagree.

The trial court issued its tentative ruling on October 10, 2024, and held a one-hour hearing on October 14, 2024. Following the hearing, the matter was taken under submission, and the trial court issued its final decision on October 16, 2024. Ehrenreich then submitted his request for a statement of decision on October 21, 2024, which the trial court denied as untimely on October 24, 2024. The trial court explained the request was untimely because the trial concluded within one calendar day and Ehrenreich did not

8

request a statement of decision prior to the submission of the matter for decision. (Citing Code Civ. Proc., § 632.)

A request for a statement of decision "must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision." (Code Civ. Proc., § 632.) "A hearing on a petition for writ of mandamus is a 'trial of a question of fact' for purposes of [this section]." (*Kearl v. Bd. of Medical Quality Assurance* (1986) 189 Cal.App.3d 1040, 1050; see also *Bevli v. Brisco* (1985) 165 Cal.App.3d 812, 819-820.)

Here, the trial—i.e., the hearing on Ehrenreich's petition—occurred on October 14, 2024, and lasted one hour. The matter was submitted without any request for a statement of decision. Ehrenreich's later request for a statement of decision was thus untimely. (*Atlantic Richfield Co. v. California Regional Water Quality Control Bd.* (2022) 85 Cal.App.5th 338, 354-357 [request for statement of decision untimely because hearing on petition for writ of mandate lasted 79 minutes and request was not made prior to the matter being submitted]; *Khan v. Medical Board* (1993) 12 Cal.App.4th 1834, 1840 [request for statement of decision untimely because hearing on petition for writ of administrative mandate concluded in one day and request was not made prior to the matter being submitted].)

Ehrenreich argues the trial court should have included "the duration of its private review prior to issuing the Tentative Ruling in its computation of the hearing/trial length" (boldface omitted) to determine if the trial concluded within one day. He cites no legal authority for this proposition. He further points to nothing in the record reflecting the time spent by the trial court in that regard. As explained by this court in *Atlantic Richfield Co. v. California Regional Water Quality Control Bd.*, *supra*, 85 Cal.App.5th at pages 356 to 357, assuming without deciding a trial court's review may count toward the trial time in Code of Civil Procedure section 632, in the absence of evidence in the record

9

regarding the amount of time spent by the trial court to review the matter, "we must presume the 'trial' in this case lasted less than eight hours."

Finally, we have no authority to "strike" the one-day trial requirement when a trial court uses a tentative ruling system, as Ehrenreich requests. (*Mostafavi Law Group, APC v. Larry Rabineau, APC* (2021) 61 Cal.App.5th 614, 625 [courts cannot ignore a statute to achieve a more desirable result].) We accordingly affirm the trial court's denial of Ehrenreich's request for a statement of decision.

C.     *The Trial Court Did Not Abuse Its Discretion in Denying Discovery*

Ehrenreich argues the trial court denied him the right to discovery by failing to respond to his request at trial to rule on whether the Secretary was obligated to respond to his discovery requests. He asserts he was prejudiced by the trial court's refusal to rule on his request because it increased "his evidentiary burden … thus, sandbagging his other preparatory/briefing efforts." We find no merit in this argument.

The trial court, on September 11, 2024, set the hearing on the merits for October 14, 2024, and ordered the parties to file their briefs by September 27, 2024, and October 4, 2024, respectively. The court further advised the parties that it would not hear live testimony and encouraged the parties to submit relevant evidence through requests for judicial notice and declarations.

Ehrenreich asserts that, on September 20, 2024, he served a set of discovery requests on the Secretary, "and notified the Trial Court via email" of such service the same day. The discovery requests were purportedly propounded under section 2655.1 of title 10 of the California Code of Regulations, which pertains to discovery in ratemaking proceedings before the California Insurance Commissioner, and Government Code section 11507.6, which pertains to discovery in administrative adjudications under the Administrative Procedure Act. Ehrenreich requested that the Secretary respond to the discovery requests by September 26, 2024.

10

Ehrenreich identifies no motion to compel discovery responses filed in the trial court, which is fatal to his argument.  Discovery motions are governed by specific rules set forth in California Rules of Court, title 3, division 11, including chapter 2 and article 4 of chapter 6.  In the absence of proof that Ehrenreich filed a discovery motion in the trial court, he cannot demonstrate error.  Ehrenreich provides no legal analysis supported by citations to authority for the proposition that the trial court was required to rule on his discovery request based on notes that he submitted to the court prior to the hearing and oral argument presented at the hearing.

D.    *The Trial Court Did Not Violate Ehrenreich's Right to Cross-examination*

Ehrenreich argues that, under Evidence Code section 356, he had the right to cross-examination at the hearing because the Secretary submitted a declaration as evidence.  Ehrenreich provides no citation to the record indicating that he requested to cross-examine the declarant or that he argued the failure to allow cross-examination violated his rights.  " 'Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived.' " (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11.)  "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.  [Citation.]  In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.)

E.    *The Trial Court Did Not Abuse Its Discretion in Denying Further Declaratory Relief*

Ehrenreich argues the trial court erred in denying his request for declaratory relief as to the definitions of certain terms.  A trial court "may refuse to exercise the power granted" by Code of Civil Procedure section 1060 as to declaratory relief "in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." (Code Civ. Proc., § 1061.)  "Whether a determination is proper in an

11

action for declaratory relief is a matter within the trial court's discretion and the court's decision to grant or deny relief will not be disturbed on appeal unless it is clearly shown its discretion was abused." (*Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 974.) Because Ehrenreich presents no reasoned argument with citation to authority as to how the trial court abused its discretion, we do not address the argument. (*Foss*, *supra*, 155 Cal.App.4th at p. 126.)

## III

### *The Presidential Elector Statutes Are Facially Constitutional*

A.      *Nature of the Constitutional Challenge*

Before analyzing the constitutional challenge, we must identify the nature of the challenge—whether it is facial or as applied. "A facial challenge considers the text of the statute, not its application." (*Howard Jarvis Taxpayers Assn. v. Weber* (2021) 67 Cal.App.5th 488, 496 (*Howard Jarvis*).) "To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute .… Rather, petitioners must demonstrate that the [statutory] provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180-181.) Thus, "[t]o prevail on a facial challenge, a plaintiff must demonstrate the statute is unconstitutional in the vast majority of cases." (*Howard Jarvis*, at p. 496.)

In contrast, "[a]n as applied challenge argues the enforcement of a statute against an individual or the manner in which the provision is applied is unconstitutional. To prevail on an as applied challenge, a plaintiff must demonstrate that the application of the statute deprived the individual of a protected right." (*Howard Jarvis*, *supra*, 67 Cal.App.5th at p. 496.)

12

We conclude Ehrenreich presents a facial constitutional challenge to the presidential elector statutes. Ehrenreich argues the statutes are unconstitutional because they require write-in presidential candidates to submit 108 declarations by write-in presidential electors and alternate electors in order for the write-in presidential candidates' votes to be counted; he does not argue unconstitutionality based on the manner or circumstance in which the statutes were/are applied to him or a group of similarly situated individuals to deprive them of their rights. Because we are considering a facial constitutional challenge, Ehrenreich has the burden of showing that the presidential elector statutes are unconstitutional in the vast majority of cases. (*Howard Jarvis*, *supra*, 67 Cal.App.5th at p. 496.)

B.      *Analytical Framework*

In considering constitutional challenges to election laws, we follow the analysis of the United States Supreme Court in *Anderson v. Celebrezze* (1983) 460 U.S. 780 (*Anderson*) and *Burdick v. Takushi* (1992) 504 U.S. 428—generally referred to as the *Anderson-Burdick* framework or the *Anderson-Burdick* balancing test. (*Edelstein*, *supra*, 29 Cal.4th at p. 174.) Under this framework, we: (1) identify the nature and extent of the burden imposed by the challenged voting law on the petitioner's constitutional rights; (2) determine the legitimacy and strength of the state's asserted interests and the extent to which those interests make it necessary to burden the petitioner's rights; and (3) weigh the petitioner's burden against the state's interests based on the pertinent standard of scrutiny. (*Anderson*, at p. 789; *Timmons v. Twin Cities Area New Party* (1997) 520 U.S. 351, 358.) Because our review is based on undisputed facts, we consider the constitutional question de novo.[5] (*Kunde v. Seiler* (2011) 197 Cal.App.4th 518, 529.)

---

[5] Because our review is de novo, we do not address Ehrenreich's arguments pertaining to purported errors in the trial court's identification and application of the standard of review or his assertion that the trial court made incorrect legal findings.

We note that "[e]vidence is key to the balancing of interests at the heart of the *Anderson-Burdick* framework." (*Mazo v. New Jersey Secretary of State* (3d Cir. 2022) 54 F.4th 124, 152.) That is because, in assessing whether a petitioner has met their burden in a facial challenge, the court " 'must be careful not to go beyond the statute's facial requirements and speculate about "hypothetical" or "imaginary" cases.' " (*Ibid.*, quoting *Washington State Grange v. Washington State Republican Party* (2008) 552 U.S. 442, 450.)

### 1. *The Nature and Extent of the Burden*

"Election laws will invariably impose some burden upon individual voters. Each provision of a code, 'whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects -- at least to some degree -- the individual's right to vote and his right to associate with others for political ends.' " (*Burdick v. Takushi*, *supra*, 504 U.S. at p. 433.) The preliminary question is whether the burden "is a *severe* restriction" or "only a *reasonable, nondiscriminatory* restriction" on constitutional rights. (*Edelstein*, *supra*, 29 Cal.4th at p. 174.)

The severity of the burden imposed by the law should be measured according to its "nature, extent, and likely impact." (*Storer v. Brown* (1974) 415 U.S. 724, 738.) The question is whether a reasonably diligent write-in presidential candidate can normally have their vote counted given the declaration requirements in the presidential elector statutes or whether such a candidate will "only rarely" succeed in doing so. (*Id.* at p. 742; *Nader v. Brewer* (9th Cir. 2008) 531 F.3d 1028, 1035.) If the latter is true, the burden is severe; if the former is true, the burden is not. (*Libertarian Party of Washington v. Munro* (9th Cir. 1994) 31 F.3d 759, 763, overruled on other grounds in *Public Integrity Alliance, Inc. v. City of Tucson* (9th Cir. 2016) 836 F.3d 1019, 1025.)

As we can best glean, Ehrenreich asserts the declaration requirements in the presidential elector statutes are generally burdensome and expensive and thus violate write-in presidential candidates' and voters' rights guaranteed by the First, Fifth, and Fourteenth Amendments. Ehrenreich did not, however, submit any admissible evidence that he or other write-in presidential candidates faced any *specific* burdens in seeking declarations from potential write-in presidential electors or alternate electors. The most that we can infer from Ehrenreich's allegations is that some write-in presidential candidates might have difficulty securing 108 declarations from write-in presidential electors and alternate electors willing to pledge their votes for the candidate's ticket. Although the burden of obtaining 108 declarations may not be trivial, there is no evidence in the record that the burden is severe such that write-in presidential candidates will only rarely succeed in meeting the declaration requirements. The presidential elector statutes are further viewpoint-neutral in that, to have their votes counted, all write-in presidential candidates, regardless of political affiliation or personal views, must submit the write-in presidential elector and alternate elector declarations.

To the extent that Ehrenreich claims the declaration requirements are burdensome because the declarations must be notarized—a requirement that Ehrenreich asserts equates to an unconstitutional filing fee—we disagree. The presidential elector statutes impose no such burden. Section 8651 provides the declarations must contain the oath or affirmation set forth in section 3 of article XX of the California Constitution (§ 8651, subds. (a)(4), (b)); however, the Government Code identifies dozens of public officials who are authorized to administer such oaths (see Gov. Code, §§ 1225, subd. (a), 24057, 24000). The presidential elector statutes do not require that the oath be administered by a notary public. Further, to the extent Ehrenreich asserts that the Secretary requires the declarations to be notarized, he identifies no admissible evidence in the record supporting his argument. Instead, the Secretary submitted a copy of her guidance to write-in presidential electors and alternate electors, which states that the "oath of office … must

15

be signed in front of an officer authorized to administer oaths, such as a county elections official or a notary public." Nothing in that document imposes a requirement that the declarations be notarized.

Based on the foregoing, we conclude the burden imposed by the presidential elector statutes is not severe.

### 2. *The Government's Interests*

We agree with the Secretary that Ehrenreich has not identified or discussed the government's interest under the presidential elector statutes. The stated purpose of the Act is to protect the effectiveness of the citizens' votes for a specific presidential ticket. (Assem. Com. on Elections, Analysis of Sen. Bill No. 103, *supra*, at p. 6.) The declaration requirements in the presidential elector statutes ensure that, if a write-in presidential ticket is elected by the voters, the state will be able to efficiently send its electors to the Electoral College as mandated by the federal Constitution. The government's interests in enforcing the will of its voters and promoting an orderly election process are legitimate and reasonable. (See, e.g., *Eu v. San Francisco County Democratic Comm.* (1989) 489 U.S. 214, 231 [states indisputably have a compelling interest in preserving the integrity of their election processes]; *Rosario v. Rockefeller* (1973) 410 U.S. 752, 761 ["preservation of the integrity of the electoral process is a legitimate and valid state goal"]; *Anderson*, *supra*, 460 U.S. at p. 796 ["There can be no question about the legitimacy of the State's interest in fostering informed and educated expressions of the popular will in a general election."].) It is also well-established that states have broad power over and interests in the mechanics of the electoral process. (See *Williams v. Rhodes* (1968) 393 U.S. 23, 28-29 [there is "no question" that the Second Article of the federal Constitution confers "extensive power to the States to pass laws regulating the selection of electors"]; *Storer v. Brown*, *supra*, 415 U.S. at p. 730 ["as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic

16

processes"].)  We accordingly conclude the state has established an important state interest under the *Burdick-Anderson* balancing test.

        3.     *The Government's Interests Outweigh the Burden Imposed on Constitutional Rights*

When weighing the competing interests, a law that imposes a "severe" burden on constitutional rights must meet strict scrutiny.  (*Timmons v. Twin Cities Area New Party*, *supra*, 520 U.S. at p. 358.)  "Lesser burdens, however, trigger less exacting review, and a [s]tate's ' "important regulatory interests" ' will usually be enough to justify ' "reasonable, nondiscriminatory restrictions." ' "  (*Ibid.*)  Thus, "[c]ourts will uphold as 'not severe' restrictions that are generally applicable, even-handed, politically neutral, and which protect the reliability and integrity of the election process."  (*Rubin v. City of Santa Monica* (9th Cir. 2002) 308 F.3d 1008, 1014.)

Here, Ehrenreich has failed to show that the presidential elector statutes impose a severe burden on his constitutional rights as a voter and/or write-in presidential candidate.  The state has set forth relevant and legitimate interests for the declaration requirements in the presidential elector statutes, and such requirements are generally applicable, even-handed, politically neutral, and intended to protect the reliability and integrity of the election process.  Where, as here, a less-than-severe burden renders strict scrutiny inapposite, "the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions."  (*Anderson*, *supra*, 460 U.S. at p. 789.)  We accordingly affirm and conclude Ehrenreich has failed to demonstrate that the presidential elector statutes are unconstitutional in the vast majority of cases. (*Howard Jarvis*, *supra*, 67 Cal.App.5th at p. 496.)

C.    *The Cases Cited by Ehrenreich Are Inapplicable*

Ehrenreich relies on several cases in his briefing for the proposition that they demonstrate constitutional error.  None of them do.

First, Ehrenreich repeatedly relies on and refers to a case, *La Follette*, but does not provide a citation to the case in the argument section of his brief.  Based on the table of authorities in his opening brief, it appears that the case may be a superior court decision, which is not precedent and may not be cited on appeal.  (Cal. Rules of Court, rule 8.1115; *County of San Bernardino v. Cohen* (2015) 242 Cal.App.4th 803, 816 [trial court decisions "bear no precedential weight" and are not citable].)

Second, Ehrenreich argues that the trial court misapplied or misinterpreted *Field v. Bowen* (2011) 199 Cal.App.4th 346 when it quoted from pages 367 to 368 that "votes that have been lawfully banned [citations] need not be counted."  He asserts the trial court "conflated a contest-specific ban that precludes write-in votes from being cast with restrictions on the counting of already-cast write-in votes based on choices written therein."  (Boldface omitted.)  We find no merit in his argument.

The statute at issue in *Field* provided:  " 'A person whose name has been written on the ballot as a write-in candidate at the general election for a voter-nominated office shall not be counted.' "  (*Field v. Bowen*, *supra*, 199 Cal.App.4th at p. 366.)  The First District Court of Appeal considered whether the statute violated the First Amendment and California's free speech clause; the federal elections clause; the due process clauses of the federal and state Constitutions; and California Constitution, article II, section 2.5, which provides:  " 'A voter who casts a vote in an election in accordance with the laws of this state shall have that vote counted.' "  (*Field*, at p. 366.)  The court concluded the statute did not violate the foregoing constitutional principles because "votes that have been lawfully banned [citations] need not be counted."  (*Id*. at pp. 367-368.)  Here, we conclude the presidential elector statutes are facially constitutional and, accordingly, the votes for write-in presidential candidates are lawfully banned when write-in presidential

18

elector and alternate elector declarations are not timely filed in accordance with the presidential elector statutes.

Third, Ehrenreich repeatedly cites footnote 5 on page 719 in *Lubin v. Panish* (1974) 415 U.S. 709 but does not clearly explain how the footnote pertains to the constitutionality of the presidential elector statutes. Ehrenreich cites the case for the proposition that the United States Supreme Court "clearly voiced an expectation that all write-in votes should actually be counted as cast." (Boldface omitted.) But the case stands for no such proposition.

The statute under consideration in *Lubin* provided "that forms required for nomination and election to congressional, state, and county offices [were] to be issued to candidates only upon prepayment of a nonrefundable filing fee." (*Lubin v. Panish*, *supra*, 415 U.S. at p. 710.) The United States Supreme Court found that, "in the absence of reasonable alternative means of ballot access, a [s]tate may not, consistent with constitutional standards, require from an indigent candidate filing fees he cannot pay." (*Id*. at p. 718.) In the footnote upon which Ehrenreich relies, the United States Supreme Court wrote: "It is suggested that a write-in procedure …, without a filing fee would be an adequate alternative to California's present filing-fee requirement. The realities of the electoral process, however, strongly suggest that 'access' via write-in votes falls far short of access in terms of having the name of the candidate on the ballot. It would allow an affluent candidate to put his name before the voters on the ballot by paying a filing fee while the indigent, relegated to the write-in provision, would be forced to rest his chances solely upon those voters who would remember his name and take the affirmative step of writing it on the ballot. That disparity would, itself, give rise to constitutional questions and, although we need not decide the issue, the intimation that a write-in provision without the filing fee required by [the statute under consideration] would constitute 'an acceptable alternative' appears dubious at best." (*Id*. at p. 719, fn. 5.) Nothing in that

19

footnote provides that votes for write-in presidential candidates must be counted as cast, as Ehrenreich asserts.

IV

*The Alternate Assertions of Error Lack Merit*

A. *The Secretary's Voting Instructions are Not at Issue*

Ehrenreich argues the trial court erred in finding the Secretary's instructions to voters regarding how to cast a vote for a write-in presidential candidate were adequate and in finding the challenge to the Secretary's voting instructions was a matter separate from the constitutionality of the presidential elector statutes. These arguments need not detain us long.

First, we agree with the trial court that the adequacy of the Secretary's voter instructions has no bearing on the claims asserted in the petition challenging the constitutionality of the presidential elector statutes. Although Ehrenreich may have briefly raised concerns about the voting instructions in the petition, his petition challenged the constitutionality of the presidential elector statutes and not the legality of the Secretary's voting instructions.

Second, Ehrenreich presents no citation to authority establishing the requirements for voter instructions or supporting his argument that the Secretary undertook a "duty to warn" and instruct the public regarding write-in presidential candidates. He further fails to explain with reasoned argument how the Secretary violated any legal requirements pertaining to such instructions. His arguments in that regard are thus deemed forfeited.

B. *The Secretary's List of Certified Candidates Is Not a Literacy Test*

Ehrenreich argues the trial court erred in limiting the scope of his arguments because he consistently argued the Secretary's certified candidate list constitutes a literacy test under the definition of "vote" in section 10101(e) of title 52 of the United States Code. Ehrenreich asserts the definition of "vote" in the federal code requires that when a voter timely casts "a write-in vote using the State-provided write-in option

20

printed on the ballot, that vote must be counted." (Boldface omitted.) There are two problems with this argument.

First, Ehrenreich fails to explain what legal import, if any, the statute has in determining the *constitutionality* of the presidential elector statutes, which form the basis of his petition. Second, the definition of "vote" upon which Ehrenreich relies applies only to the provisions in the subsection within which it is located (52 U.S.C. § 10101(e) ["When used in the subsection, the word 'vote' includes … "]), and Ehrenreich fails to explain how any of the requirements in that subsection apply to the constitutional issues raised in the petition. We thus deem the argument forfeited.

## DISPOSITION

The judgment is affirmed. The Secretary shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)-(2).)


/s/
BOULWARE EURIE, J.

We concur:



/s/
KRAUSE, Acting P. J.



/s/
MESIWALA, J.

21